United States Courts
Southern District of Texas
F I L E D

AUG 31 . 2020

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NACHAIYA KAMA | § | |
| Plaintiff, | § § § | |
| vs. | § § | C.A. No. 4:19-cv-04682 |
| TIRR MEMORIAL HERMANN, | § § § | |
| Defendant. | § | (JURY TRIAL DEMANDED) |

## PLAINTIFF KAMA'S ORIGINAL COMPLAINT (AMENDED)

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, Nachaiya Kama, filing her Original Complaint complaining of Defendant, TIRR-"Memorial Hermann," and in support thereof would show as follows:

### I.

### JURISDICTION, PARTIES, AND VENUE

1.1. This Court has jurisdiction over the causes of action alleged by the Plaintiff under federal questions and Title VII of the Civil Rights Act of 1964, as amended.

Ms. Nachaiya Kama resides in Harris County, Texas. Title VII of the Civil Rights Act of 1964 and Texas Labour Laws protect Plaintiff Kama. Plaintiff Kama was at all relevant times an employee within the meaning of the applicable statute.

1.2. TIRR-"Memorial Hermann" operates in Houston, Texas. The Defendant was at all times the Plaintiff's employer within the meaning of the aforementioned applicable statute.

1.3. TIRR-"Memorial Hermann" engaged in an industry affecting commerce and brags about more than twenty-five thousand (25,000) employees and five thousand five hundred (5,500) physicians.

1.4. The employment practices alleged to be unlawful/illegal herein were committed within the Southern District of Texas, Houston Division. The venue is appropriate in this Court.

## **VICARIOUS LIABILITY – RESPONDEAT SUPERIOR**

1.5. Whenever in this Complaint it is alleged that TIRR-"Memorial Hermann" did any act or thing, it is meant that the Defendant, TIRR-"Memorial Hermann's" supervisors, agents, servants, employees, or representatives did such act and that at that time such act was done, it was done with the full authorization or ratification of the Defendant, TIRR-"Memorial Hermann," or was done in the regular and routine course and scope of employment of Defendant, TIRR-"Memorial Hermann's" supervisors, agents, servants, employees, or representatives.

1.6. The acts of management were performed while in the employment of Defendant's, TIRR-"Memorial Hermann's," to further Defendant, TIRR-"Memorial Hermann's" business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said, employees.

## II.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2.1 Plaintiff Kama filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. In that Charge, No. 460-2019-04491, and any amendments and/or attachments thereto, Plaintiff Kama asserted that the Defendant sexually harassed her and retaliated against her after she experienced sexual assault, sexual harassment, racial discrimination, sustained a work-related injury, and was subjected to a hostile work environment.

2.2 Therefore, Plaintiff was forced to file this suit to protect her employment rights violated by the Defendant. Plaintiff has exhausted her administrative remedies and filed this suit within the statutory limitations period.

## III.

## FACTUAL BACKGROUND

3.1 It is said that "in the end, you tend to focus on the beginning." As Plaintiff Kama described the heinous events she had endured to Houston Police Department Officer J. Mach, that phrase never rang truer; unfortunately, what started as a promising job opportunity with TIRR-"Memorial Hermann" ended in sexual harassment, sexual assault, hostile work environment, racial discrimination, retaliation and Plaintiff Kama's subsequent termination under a Doctor's care.

3.2 In September 2017, Plaintiff Kama was hired as a Clinical Care Coordinator/Nursing Assistant. However, her nightmare began months before. In April 2017, a few weeks after Plaintiff Kama moved to Texas, Plaintiff Kama received an email from TIRR-"Memorial Hermann," inviting her to participate in an interview and RSVP for a job. Upon her arrival, Plaintiff Kama was

interviewed by Clinical Nurse Manager John McLeod, who saw her and immediately said to the recruiter, "***Give me her file.***"

3.3 Manager McLeod's actions were unbefitting of an interviewer and Manager from the outset. He conveyed his personal interest in Plaintiff Kama without shame. Manager McLeod even went so far as to tell her that she qualified for the position, but she must ***comply with whatever he wanted*** if she wanted the job. Although Plaintiff Kama was extremely uncomfortable, her ambition and aspirations to work in the healthcare industry with an employer like TIRR-"Memorial Hermann" edged out any feelings of wariness. After all, she was a relatively new resident in Houston, Texas.

3.4 As the interview ended, Plaintiff Kama was unable to readily accept the position with TIRR-"Memorial Hermann" because she needed to have her professional license transferred to the State of Texas. She assured former the recruiter and Manager McLeod that she could have the issue taken care of in about three months. In response to that, the recruiter told Plaintiff Kama to keep in touch, and Manager McLeod ensured he had Plaintiff Kama's phone number. Exchanging phone numbers was just the beginning of Manager McLeod's improprieties.

3.5 On or about July 2017, Plaintiff Kama reached out to the recruiter twice via email when she got her license but to no avail. On Wednesday, August 2, 2017, a recruitment specialist reached out to Plaintiff Kama and invited her for another interview day, August 8, 2017. Plaintiff Kama accepted and to avoid dealing with Manager McLeod.

3.6 During the interview day, Plaintiff Kama learned that the former recruiter no longer worked for the company, and the new recruiter Lyana Wittorf told Plaintiff Kama since she was already interviewed before that she will reach out to Manager McLeod. Manager McLeod told Plaintiff Kama that she already had the job from the previous interview, and she didn't have to be

interviewed again and that he will need the new license to start the hiring process. Manager McLeod told Plaintiff Kama not to contact anyone even if they contacted her for the hiring process. On the interview day, Manager McLeod learned that Plaintiff Kama worked at 24 Hour Fitness while waiting to start her dream job in a hospital. On or about August 2017, during Plaintiff Kama's hiring process into TIRR Memorial Hermann, Manager McLeod showed up at 24 Hour Fitness and offered her a ride home from work. Plaintiff Kama did not own a vehicle. As they arrived at her home, Manager McLeod feigned a low-battery and told Plaintiff Kama that he needed to come inside to charge his phone because he will need the battery life to use his GPS.

3.7 Yet, as the two entered the Plaintiff's home, restoring his cell's battery life seemed to be the last thing on Mr. McLeod's mind. Manager McLeod grabbed Plaintiff Kama from behind and began kissing her neck. Manager McLeod did not have Plaintiff Kama's consent to touch her; he did not listen to her. She said **NO!** Several times. She repeatedly told him to stop. Notwithstanding, Manager McLeod used his brute strength to pull her to the floor, get on top of her, and remove her pants. Plaintiff Kama struggled helplessly to keep her pants in place and cried hopelessly as she realized her attempts were in vain.

3.8 Strangely, as Manager McLeod violated Plaintiff Kama sexually in her home, he secured all evidence in a large roll of paper towel. He took note of the bare rooms and offered to purchase her furniture. The audacity!

3.9 As Manager McLeod left Plaintiff Kama's home, he told her that she had the job with TIRR Memorial Hermann. He also proceeded to call Plaintiff Kama three times, to which she provided no answer.

3.10   On Tuesday, September 5, 2017, TIRR Memorial Hermann Recruiter Lyana Wittofs reached out to Plaintiff Kama to offer her the Clinical Care Coordinator/Nursing Assistant position. Initially, she rejected the offer. However, as Plaintiff Kama was newly situated in Houston and had mounting bills to pay, she begrudgingly accepted the position.

3.11   Plaintiff Kama took the precautionary step of wearing a fake engagement ring on her left hand in hopes of dissuading Manager McLeod from paying her any further attention. Yet, as soon as she assumed her position, Manager McLeod assigned Plaintiff Kama to his department. As he was now Plaintiff Kama's immediate supervisor, Manager McLeod used his superior position at TIRR Memorial Hermann to manipulate her further and threaten her. In one instance, Manager McLeod warned Plaintiff Kama against trying to implicate him in his sexual misdeeds. To be sure, he threatened her by saying, "If I see you talking to anyone, I'll write you up!"

3.12   In or about November of 2017, Manager McLeod called Plaintiff Kama into his office alone and asked why she's not smiling. He asked her to sit on his lap. She refused. Aggravated by her refusal, Manager McLeod told Plaintiff Kama that he would "come by" her home. Plaintiff Kama said she would not be home; she will be going to the Galleria Mall. Sure enough, Manager McLeod didn't leave or get the message he was waiting for Plaintiff Kama that evening as she exited the bus.

3.13   Woefully, this unsolicited visit from Manager McLeod ended similarly to the first. Plaintiff Kama was raped in her home for a second time, lying motionless as Manager McLeod had his way with her. Manager McLeod kept repeating, "I like you, and you like me." Plaintiff Kama wholly denied such. Manager McLeod then told her, "African women like to cheat on their husbands." He also warned Plaintiff Kama to stay away from Efe Enabulele, a Registered Nurse and coworker that was rumored to be carrying on a relationship with him. When the rape ended,

Manager McLeod went to Plaintiff Kama's bathroom to clean himself up, again getting rid of the evidence. He left her on her bedroom floor. It was at this time that Plaintiff Kama was able to get a quick video/photograph of Mr. McLeod, as evidence of the assault.

3.14 Thereafter, Manager McLeod began harassing Plaintiff Kama to send him a sexually explicit message and pictures of her. Plaintiff Kama was horrified but complied by sending him photos of other scantily clad women in hopes of appeasing her boss and keeping her job. She did not like who he was turning her to become. He also confiscated Plaintiff Kama's phones for extensive periods at a time; he wanted to know who she was in contact with, invading her privacy.

3.15 In or about April of 2018, Plaintiff Kama told Manager McLeod that she didn't want to work on his unit anymore because of his unfair treatments, manipulations, and hostile work environment; he refused and told her he was "the best manager and that none of these female managers would want her." Plaintiff Kama complied with the Memorial Hermann Health System standard of conduct by talking to another member of the management team if you are uncomfortable with your Manager. Plaintiff Kama during her break time went to Clinical Nurse Manager Nwagboso's Office in tears but could not speak up because of shame.

3.16 In or about May of 2018, Plaintiff Kama traveled out of Texas for personal reasons. Upon her return to work, the circumstances fared no better. Manager McLeod immediately laid claim to her by reminding her of the "power" he had within the Memorial Hermann System. In another instance, Manager McLeod warned Plaintiff Kama against trying to implicate him "That he has a lot of power to take care of anything faster than anyone can." Manager McLeod threatened plaintiff Kama; he stated, "*I know where you live*." Additionally, he insisted, "you're mine" and "that's my pussy!" Again, Plaintiff Kama wholly rejected such a notion, to no avail.

3.17   The downward spiral that ultimately led to Plaintiff Kama's unlawful termination started shortly after her return from her approved time off work. Manager McLeod peppered Plaintiff Kama with comments that patients were complaining about her. Such was in stark contrast to Plaintiff Kama's work experiences. Her patients loved her. In fact, TIRR Memorial Hermann's Senior Vice President and CEO Jerry A. Ashworth was so impressed with Plaintiff Kama that he did not hesitate at a chance to provide her with a personal letter of recommendation touting her high-performance.

3.18   On or about June 21, 2018, Manager Nwagboso noticed a change in Plaintiff Kama's demeanor. Worried, she visited her home. There, Plaintiff Kama told her about the sexual assaults by Manager McLeod and shared the proof. Manager Nwagboso stated, "you didn't like it," and she warned, "I would be quiet for your own safety." She further encouraged Plaintiff Kama to transfer to her unit.

3.19   Manager McLeod next used some of Plaintiff Kama's coworkers against her. He instructed employees to make complaints against her and frustrate her. He then issued her unwarranted write-ups/discipline. Manager McLeod continued to harass her, including telling Plaintiff Kama that if he were taking care of her sexually, she would not be getting into such trouble. Plaintiff Kama heard from some of her coworkers that Manager McLeod had a history of sexually harassing female employees on the job. His improper behavior had been ignored many times before, and no strict action was taken.

3.20   On October 4, 2018, Plaintiff Kama sustained a work-related injury that re-occurred on her neck and left shoulder during patient care with witnesses present on Manager McLeod's unit where she worked on the shift of the injury. Manager McLeod used the opportunity to pepper Plaintiff Kama by changing her schedule to make work-life unbearable.

3.21 In October 2018, Plaintiff Kama complained to HR - Emerald Smart and Rebecca "Becky" Thayer about **discrimination**, of which Manager Nwagboso was aware of. The Complaint wasn't attended to and went unnoticed. Plaintiff Kama sent another reminder in November 2018, reaching out again to Emerald Smart and Becky Thayer; the complaints were ignored.

3.22 On January 3, 2019, after Plaintiff Kama's Doctor's visit, she was scheduled for a follow-up visit for Thursday, February 7, 2019, to follow-up on the healing process. Manager McLeod did not care to know the outcome and feedback of the Doctor's visit due to the work-related injury she sustained in the work premises.

3.23 On Friday, January 11, 2019, Plaintiff Kama was terminated unlawfully by Manager McLeod and Rebecca "Becky" Thayer, who racially discriminated against Plaintiff Kama on several occasions; and deprived Plaintiff Kama her First Amendment to the Constitution. "Freedom of speech" while "under color" during termination. Allegedly, they claim she was not wearing her assigned locator badge. Despite her protest that the locator badge was affixed to her uniform, but with a dead battery, she was nonetheless discharged, even though she was a patient; an injured employee still under Doctor's care and still receiving treatment to recover.

3.24 On January 18, 2019, Plaintiff Kama appealed to her termination. Her termination remained unchanged, and was denied unemployment benefits due to false evidence presented.

## IV.

## CAUSES OF ACTION

A. **SEXUAL HARASSMENT PURSUANT TO TITLE VII**

4.1 Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

4.2   Defendant engaged in unlawful sex discrimination by subjecting Plaintiff Kama to unwelcome sexual harassment and a hostile work environment that included acts, comments, and deeds.

4.3   The above-described unwelcome sexual harassment created an intimidating, oppressive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

4.4   Defendant at all times relevant hereto had actual knowledge of the conduct described in the paragraphs above in large part because of the harasser's influential position and the open and obvious nature of the unlawful sexual misconduct that permeated.

4.5   As a result of the hostile and offensive environment perpetrated by Defendant through its agents, supervisors, or employees, and maintained by Defendant's failure to protect Plaintiff Kama from further harassment and instead of causing the discharge of Plaintiff Kama caused her to suffer severe emotional distress and physical injury.

4.6   As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff Kama through its agents, supervisors, or employees, Plaintiff Kama has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and/or will incur medical expenses for treatment by psychotherapists and other health professionals, and for other incidental expenses, and she has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff Kama is thereby entitled to general and compensatory damages in amounts to be proven at trial and all other relief outlined further herein as per statutory relief.

### B. <u>RACIAL DISCRIMINATION PURSUANT TO TITLE VII</u>

4.7   Defendant engaged in unlawful racial discrimination by violating Plaintiff's first amendment to the constitution intentionally "under color."

### C. <u>RETALIATION PURSUANT TO TITLE VII</u>

4.8 Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

4.9 After opposing sexual harassment and continued sexual assault, Plaintiff Kama was subsequently terminated for utterly false reasons.

4.10 Defendant illegally terminated Plaintiff while still a patient and injured an employee under the care of the Doctor assigned to the Plaintiff by the Defendant. This act violates the law and is illegal.

4.11 Defendant had no legitimate business reasons for any such acts. This act of retaliation violates Title VII's anti-retaliation provisions.

4.12 As a direct proximate result of Defendant's willful, knowing, and intentional discriminations and retaliation against her, Plaintiff Kama has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish, and emotional distress. Plaintiff Kama is thereby entitled to general, compensatory, and punitive damages in amounts to be proven at trial.

### D. ASSAULT & BATTERY AS TO DEFENDANT

4.13. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

4.14 Defendant unlawfully committed assault and battery upon Plaintiff. Defendant knowingly, intentionally, and without Plaintiff's consent, invaded Plaintiff's personal space and sexually assaulted her and threatened her continuously.

4.15 Defendant, through the acts as mentioned above, intentionally and knowingly caused and allowed harmful and offensive interaction and physical contact with Plaintiff when Defendant knew or should have reasonably believed that Plaintiff found such to be offensive.

## V.
## JURY DEMAND

5.1 Plaintiff requests that this action be heard before a jury.

## VI.
## DAMAGES

6.1 Defendant's conduct constitutes violations of statutory law. Such unlawful conduct seriously affects Plaintiff Kama in her occupation, trade, and business. Because of Defendant's unlawful and illegal conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, stress, and other damages. Plaintiff has suffered a work-related injury, direct injury as a proximate result of the unlawful disciplinary practices, policies, and procedures of the Defendant. Accordingly,

Plaintiff Kama seeks all general, special, incidental, economic, compensatory, punitive, and consequential damages in an amount to be proved at trial, including punitive damages.

6.2 Because of Defendant's unlawful, illegal, and tortuous conduct, it has been necessary for Plaintiff Kama to retain the undersigned attorney to represent her in these causes of action. Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should the same become necessary.

6.3 Additionally, Plaintiff Kama has incurred out-of-pocket expenses, which include litigation costs and other costs to preserve her ability to earn a living. Accordingly, Plaintiff Kama seeks all general, special, incidental, and consequential damages as shall be proven at trial.

6.4 Further, Plaintiff Kama seeks pre-judgment interest at a rate commensurate with the actual quality of interest in the marketplace or the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff Kama also seeks post-judgment interest at the maximum rate allowed by law in the event the Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching the Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that the Defendant is cited to appear and answer herein and that on final trial, Plaintiff have a judgment against Defendant for:

a. A permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which participates in sexual harassment, sexual assault, racial discrimination, an injury sustained work-related and retaliation, as outlined above;

b.   All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity,

c.   A written and publicly tendered an unreserved apology for all listed damages above.

d.   Compensatory damages for pain and mental suffering in the past and future;

e.   Punitive damages in an amount above the minimum jurisdictional limit of the Court;

f.   Reasonable attorney's fees with conditional awards in the event of appeal;

g.   Pre-judgment interest at the highest rate permitted by law;

h.   Post-judgment interest from the judgment until paid at the highest interest rate permitted by law.

i.   Costs of Court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

j.   Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

k.   Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully Submitted,

Date: August 31st 2020

_____
**Plaintiff Kama.**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NACHAIYA KAMA | § § § | |
| Plaintiff, | § § | C.A. No. 4:19-cv-04682 |
| vs. | § § | |
| TIRR MEMORIAL HERMANN, | § § | |
| Defendant. | § § | (JURY TRIAL DEMANDED) |

## REPLY/AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COME NOW, Plaintiff, Nachaiya Kama, in the above-captioned cause, this is to update the Amend Complaint based on new facts that have come up.

In response to Paragraph 3.22 of the Defendant's claim, Plaintiff counters the Defendant's affirmative defense as the Defendant denies its unlawful employment practices that the Plaintiff's unlawful termination did not violate Title VII of the Civil Rights Act of 1964 or any applicable law. The Plaintiff's illegal termination under the Doctor's care violated Federal/State Laws and code (TLC -Sec.21.051), of which **These facts are available to the public for public viewing.**

Plaintiff counters the Defendant's claims of acting in good faith because the Defendant intentionally committed to an unlawful employment practice in Discrimination (Sex, Race, Retaliation, Hostile work environment, and Others).

The Amended Complaint is attached as Exhibit "A." Plaintiff states that justice requires that this Honorable Court allows the amended Complaint of new facts.

Respectfully Submitted,

Date: August 31th 2020

_____
Plaintiff Kama. (Pro Se)